THE STATE v. JAMES W. GARRETT, Appellant.

Division Two, December 13, 1920.

1. **MOTION FOR NEW TRIAL: General Assignments.** Vague generalities and mere assertions in the motion for a new trial in a criminal case raise no point for consideration in the appellate court.

2. **DEMURRER TO EVIDENCE.** Where the verdict is not against the law, or the evidence, or the law and the evidence, or the

State v. Garrett.

weight of the evidence, nor lacking in substantial evidence to support it, nor the result of passion or prejudice on the part of the jury, a demurrer to the evidence is properly overruled.

3. **VOLUNTARY**: Definition. It is not necessary to define the word "voluntary" in the instruction telling the jury that if they find from the evidence that any statements made by the accused were not voluntary they should disregard them; and if defendant desires that it be defined, it is his duty to ask the court by its instructions to define it.

4. **INSTRUCTION**: No Request: Collateral Matters. It is the duty of the trial court, whether requested to do so or not, to instruct the jury in writing upon matters which are necessary for their information in arriving at their verdict; but it is not the court's duty, when no request is made, to instruct on matters which in their nature are purely collateral or incidental, such as questions relating to good character, or to the testimony of accomplices, or to the definition of the word "voluntary" in the instruction telling the jury that any statements made by defendant which were not voluntary should be disregarded.

5. ————: Murder and Robbery: Possession of Money: Legitimate Inferences. An instruction telling the jury in a murder trial that the State has not shown that deceased had in her possession any money at the time of her death, or that any robbery was committed in connection with her death, or that any money was found in the possession of defendant, and directing them therefore to disregard all testimony offered by the State on the subject of the financial condition of the deceased and all testimony showing the possession of money by defendant subsequently to her death, is properly refused where it is contrary to the facts shown by the evidence, and to proper and legitimate inferences to be drawn therefrom.

6. **JURY**: Excusing Part of Venire: No Objection. The objection that "the trial court ordered fifty men to be summoned as jurors and when that was done, without first calling the case and without consultation with defendant and without his consent, excused twenty-two of them and directed the sheriff to fill said panel immediately from the town in which court was being held, and accordingly the sheriff did summon twenty-two jurors from said town," made for the first time in the motion for a new trial, is not available for review in the Supreme Court; and especially should this be the ruling where the record does not show that the sheriff was directed to fill the panel from the town in which the court was being held, or that he did so, and it is no where alleged that the defendant was not aware of the facts pertaining to the matter at the time the jury was selected.

7. ———: ———: ———: **Good Faith.** Good faith forbids that a defendant in a criminal case should sit idly by and accept a jury made up in whole or in part of persons incompetent for any reason known to him, and take his chances upon the verdict of such a jury, and then, when the verdict is not to his liking, obtain a new trial upon the ground of such incompetency.

8. ———: **Method of Challenge.** Both at common law and by the adjudicated cases, a challenge to the array of jurors should be made in writing.

9. **JUROR: Competency: Opinion Formed.** Members of the panel who stated on their *voir dire* that they had formed an opinion as to the guilt or innocence of defendant, but that it was based upon rumor heard, or newspaper reports read, either about the time the homicide was committed or at the time of a former trial of the case, but that they could, nevertheless, give to defendant a fair and impartial trial, were not incompetent jurors.

10. ———: ———: ———: **Hearing Evidence at Former Trial.** A juror, otherwise competent, is not disqualified merely because he heard some fragments of the evidence at a former trial of the case against defendant.

11. **TRIAL JUDGE: Leaving Scene of Trial.** The verity of the record cannot be impeached by the mere affidavit of the defendant to the effect that, after the case had been submitted to the jury, the court, at about seven o'clock in the evening, took a recess until the following morning, and the trial judge, leaving the jury in charge of the sheriff, went to his home in a neighboring town, and later in the evening was recalled by telephone and received the verdict. But even if the judge left the scene of the trial and then returned, as in the affidavit stated, it cannot be seen how the rights of the defendant were prejudiced in the slightest degree by the incident.

12. **EVIDENCE: Motive: Possession of Money.** Evidence tending to show that the deceased commonly kept, or was commonly believed to keep, money about the premises in which she was murdered, and that such rumor was known to defendant, is competent upon the question of motive. Such evidence tends to support the State's theory that robbery was the impelling motive for the homicide.

13. ———: **Financial Condition of Defendant: Possession of Money Before and After Homicide.** Evidence bearing upon the financial condition of defendant, both before and after the murder of a lone woman in her house, where the State's theory is that robbery was the impelling motive, is admissible and competent. Evidence tending to show that deceased had money in her posses-

sion before she was murdered and none afterwards, that defendant was penniless before the crime was committed and afterwards was in funds, particularly if of the kind and character known to have been possessed by deceased, and that defendant had opportunity to commit both the robbery and murder, absent reasonable explanation, tends to identify the defendant as the murderer; and the length of time intervening between defendant's state of poverty and his state of wealth would be a circumstance affecting the weight, but not the competency, of the evidence.

Appeal from Saline Criminal Court.—*Hon John A. Rich,* Judge

AFFIRMED.

*R. M. Reynolds* and *Roy D. Rucker* for appellant.

*Frank W. McAllister,* Attorney-General, and *C. P. Le Mire,* Assistant Attorney-General, for respondent.

(1) There was sufficient evidence of guilt to support the verdict. State v. Maurer, 255 Mo. 168; State v. Concelia, 250 Mo. 420; State v. Howard, 203 Mo. 603. (a) An unsupported allegation of passion and prejudice presents nothing for review. State v. Howell, 117 Mo. 342; State v. Gonce, 87 Mo. 630; State v. McBrien, 265 Mo. 594; State v. Mace, 263 Mo. 157. (2) The court did not err is admitting evidence tending to show that the deceased was reputed to keep a large sum of money in her house and that defendent was cognizant of this reputation. State v. Rasco, 239 Mo. 564; State v. Shelton, 223 Mo. 132; State v. Donnelley, 130 Mo. 642; State v. Jackson, 95 Mo. 623; Kennedy v. People, 39 N. Y. 253; 21 Cyc. 919. (3) Evidence tending to show defendant's financial condition about the time of the homicide was properly admitted. People v. Leung Ock, 74 Pac. 986; Lancaster v. State, 31 S. W. 575; Clough v. State, 7 Neb. 320; 21 Cyc. 940; also cases cited above. (4) Facts as to the conduct of defendant with regard to drinking whiskey on the way to the funeral of

Sarah J. Campbell were admissible. State v. Daley, 210
Mo. 676; State v. Brown, 168 Mo. 449; 21 Cyc. 937, 939.
(5) Voluntary statements made by defendant after his
arrest were properly admitted in evidence. State v.
Daley, 210 Mo. 676; State v. Nocton, 121 Mo. 537;
Baines v. State, 66 S. W. 847; 21 Cyc. 941. (6) The
court did not err in refusing defendant's demurrer to the
evidence. State v. Conway, 241 Mo. 278; State v.
Toohey, 203 Mo. 678; State v. Cushenberry, 157 Mo.
179. (7) Instruction D-2, requested by the defendant,
was properly refused. State v. Donnelly, 130 Mo. 642;
State v. Jackson, 95 Mo. 623; Marabele v. State, 89 Ga.
425; 21 Cyc. 919. (8) The irregularity of the court in
excusing jurors on the regular panel and filling in the
vacancies by a special summons is not saved for review
by a mere allegation in a motion for a new trial. State
v. Jones, 61 Mo. 232; State v. Grant, 152 Mo. 57; State
v. Marshall, 36 Mo. 400. (9) It was not reversible error
for the trial judge to leave the court room and the county
seat while the jury was out in this case. Appellant's
affidavit discloses that at six o'clock, p. m., it appearing
that the jury would be unable to reach a verdict that
night, the court took a recess until the following morn-
ing. State v. Burns, 148 Mo. 174.

WILLIAMSON, J.—The defendant, James W. Gar-
rett, was convicted of murder in the first degree and his
punishment was fixed at life-imprisonment in the peni-
tentiary. He had duly appealed.

This is the second time that this case has been in this
court. The former appeal was from a like conviction
and sentence. The opinion is reported in 276 Mo. 302,
207 S. W. 784. The former judgment was reversed be-
cause of an error in an instruction.

The facts in the present record are essentially the
same as on the former trial, and for that reason we adopt
the lucid statement of facts prepared by WHITE, C., and
set forth in State v. Garrett, supra, as applicable here,
with the exceptions hereinafter noted.

There was evidence in behalf of the defendant upon the last trial that he frequently carried a large roll of money—amount not stated—and that he was seen with such a roll a short time before, as well as immediately after, Mrs. Campbell, the deceased, had been murdered. As upon the former hearing, so in the trial now in review, defendant did not testify in his own behalf, and, as before, certain relatives with whom defendant claimed he had been visiting at Moberly, Missouri, at such a time as made it impossible that he could have been at New Frankfort, the scene of the tragedy, when the murder was committed, also failed to testify. The defense was an alibi, and upon the last trial defendant produced one or two witnesses, in addition to the two who testified on the first trial, in support of that defense.

The court gave eight instructions in behalf of the State, and thirteen at the instance of the defendant, and refused two asked by the defendant.

Appellant is not represented by counsel in this court. We are therefore relegated to our own study of the record and to the motion for a new trial for information concerning any errors which may have occurred in the trial court.

The motion for a new trial is voluminous. In thirteen printed pages it sets forth twenty-eight distinct grounds, ranging from an allegation in the first ground that "the verdict is against the law," to a final charge in the twenty-eighth assignment that "the defendant has not had a fair and impartial trial." The whole course and conduct of the trial is assailed from the examination of the jurors upon their *voir dire* to the alleged action of the trial judge in leaving the courthouse after the cause had been submitted to the jury. We decline to take up these charges *seriatim* and discuss them separately. We have so often held that vague generalities and mere assertions in motions for a new trial are valueless and raise no point for appellate consideration, that we do not think it

General Assignments.

necessary to reiterate the reasons upon which that con-
clusion is based. Those in need of information upon
that point may consult State v. Scott, 214 Mo. 257; State
v. Mann, 217 S. W. l. c. 69, and the authorities there
cited.

We will, therefore, rule specifically upon such mat-
ters in this motion as, upon a careful reading of the rec-
ord, approximating five hundred typewritten pages, may
appear to us to be worthy of separate mention, and as to
the remainder, content ourselves with the general state-
ment that we find them devoid of merit.

I. The record discloses that, contrary to the
grounds assigned in the motion for a new trial, the ver-
dict is not against the law, nor against the evidence, nor
against both the law and the evidence, nor against the
weight of the evidence, nor lacking in sub-
Demurrer to
Evidence. stantial evidence to support it, nor is the
verdict, so far as this record discloses, the
result of passion or prejudice, and appellant's demurrer
to the evidence was, therefore, properly overruled.

II. The eight instructions given in behalf of the
State, all of which are assailed in the motion for a new
trial, are in time-honored form and follow oft-approved
precedents. Of these instructions those numbered six,
seven and eight are specifically questioned
Usual
Instructions. by appellant, but the criticisms urged
against them are, we think, hyper-technical.
Instruction numbered six is the usual instruction with
reference to the weight and credibility of the evidence,
and has been approved time out of mind. [State v.
Shelton, 223 Mo. 118.] Instruction numbered seven, re-
lating to the presence or absence of motive, was ex-
pressly approved in the noted case of State v. Duestrow,
137 Mo. 44, and has been approved in many subsequent
cases in substantially the form in which it was given
in this case.

Instruction numbered eight is to the effect that if
the jury found from the evidence that any statements

made by the accused were not voluntary, then the jury should disregard such statements. The criti-
**Voluntary Statements.** cism is, in effect, that the word voluntary was not defined. No definition was neces-
sary, but if appellant desired that such a definition should be given it was his duty to ask the court by its instructions to define that term. This he did not do, and he cannot now be heard to complain. While it is the duty of the court in criminal cases to instruct the jury, whether requested to do so or not, it is not error for the court to fail to instruct upon matters which are in their nature purely collateral or incidental. The duty to instruct the jury in writing is a duty arising from a statutory command, and the statute (Sec. 5231, R. S. 1909) only requires instructions to be given to the jury upon matters "which are necessary for their informa-
tion in giving their verdict." Questions relating to good character (State v. McNamara, 100 Mo. l. c. 107), testi-
mony of accomplices (State v. Weatherman, 202 Mo. 6) and similar matters are collateral in their character (State v. Lackey, 230 Mo. 707, 1. c. 720), and so, we think, was the definition of the word "voluntary" in this in-
stance. It follows that there was no error in the action of the trial court with respect to the eighth instruction in this case. For the same reason there was no error in the failure to instruct with reference to the purpose of the admission of certain evidence.

III. Error is also asserted in refusing to give instruction marked D-2 in behalf of appellant. This instruction reads as follows:

"You are instructed that the State has not shown that the deceased had in her possession any money at the time of her death, nor that any robbery was com-
**Legitimate Inference.** mitted in connection with her death, nor is there any proof that the money found upon the person of the defendant at the time of his arrest had ever belonged to the deceased or been in her possession during her lifetime.

"You are therefore instructed and directed to disregard all testimony offered by the State on the subject of the financial condition of the deceased and you are further instructed to disregard all testimony showing the possession of any money by the defendant subsequent to the death of the deceased."

This instruction was properly refused for the reason that it was directly contrary to the facts shown by the evidence, and to proper and legitimate inference to be drawn from the evidence. [State v. Donnelly, 130 Mo. 642, l. c. 651.] The instructions taken as a whole were full and complete and fairly stated the applicable law.

IV. As another ground for a new trial, appellant in his motion for a new trial asserts that the trial court ordered fifty men to be summoned as jurors, which was done, and that thereafter, "without first calling the case, the court without consultation with and without the consent of defendant, excused twenty-two of said jurors and directed the sheriff to fill said panel immediately and from the town of Marshall, and accordingly the sheriff did summon twenty-two more jurors from the town of Marshall."

Jury.

We think that this assignment must also be overruled. The record does not show that the sheriff was directed to fill the panel from the town of Marshall, nor that he did so. It is nowhere alleged that appellant was not aware of the facts as to this matter at the time the jury was selected, yet the appellant made no objection on this ground upon the examination of the jurors upon the *voir dire* and saved no exception upon this ground. The objection appears for the first time in the motion for a new trial and it is for that reason not available for review here. [State v. Ivy, 192 S. W. 737, l. c. 739; State v. Brown, 119 Mo. 527, l. c. 537.] Good faith forbids that the defendant in a criminal case should sit idly by and accept a jury made up in whole or in part of persons incompetent for any reason known

to him, and take his chances upon the verdict of such a jury, and then, when the result is not to his liking, obtain a new trial upon the ground of such incompetency.   Furthermore a challenge to the array, both at common law and under our decisions should be made in writing, and this was not done in the case at bar (State v. Belknap, 221 S. W. 39, l. c. 44;  State v. Church, 199 Mo. 605, l. c. 629;  State v. Taylor, 134 Mo. 109, l. c. 143).

Appellant also insists that certain jurors who were on the panel were incompetent from having formed and expressed an opinion as to his guilt or innocence.   The record shows that certain members of the panel stated that they had an opinion as to the guilt or innocence of appellant, but it further discloses that this opinion was in each instance based upon rumor and newspaper reports, either at about the time the homicide was committed, or at the time of former trials of this cause. Certain of these jurors had also heard some fragments of the testimony at former hearings of this case.   Each of the jurors further stated, however, that he could give the appellant a fair and impartial trial.

Under the statute (Sec. 5220, R. S. 1909), as well as numerous decisions, such an opinion, formed from mere rumor and newspaper reports, is not sufficient to disqualify a juror when it further appears that he can afford the defendant a fair and impartial trial notwithstanding such an opinion. [State v. Vickers, 209 Mo. 12, l. c. 27; State v. Sykes, 191 Mo. 62, l. c. 76; State v. Sherman, 264 Mo. 374, l. c. 380.] Nor is a juror, otherwise competent, disqualified merely because he may have heard portions of the evidence at previous hearings.   [State v. Riddle, 170 Mo. 287, l. c. 294.]

V.   Error is assigned in the action of the trial court in this, that after this cause had been submitted to the jury, the court took a recess until the following morning, and the judge, leaving the jury in the charge of the

**Judge.**  sheriff, went to his home in Slater, Missouri. It appears from the affidavit of the appellant that the recess was taken at about seven o'clock in the evening, and that during the same evening the judge was recalled by telephone and received the verdict of the jury. As to all of these matters, the record is silent. It is too plain for argument that the verity of the record cannot be impeached by the mere affidavit of the accused, and for that reason we might well ignore this point. However, we cannot conceive how the rights of the appellant were prejudiced in the slightest degree by this incident, even if it occurred as claimed. This assignment also is devoid of merit.

VI. It is claimed that error was committed in admitting evidence tending to show that deceased was reported to be in the habit of keeping considerable sums **Evidence.**  of money upon her person or about her house and that defendant was cognizant of this reputation, and also as to the admission of appellant's financial condition before and after the homicide.

The evidence tending to show that the deceased commonly kept, or was commonly believed to keep, money about the premises and that that rumor was known to appellant, was clearly competent upon the question of motive. [State v. Rasco, 239 Mo. 535, l. c. 564; State v. Shelton, 223 Mo. 118, l. c. 132.] It was the theory of the State that robbery was the impelling motive in this case, and the evidence tends to support that theory.

Upon the admissibility of evidence bearing upon the financial condition of appellant, both before and after the homicide, we have found no direct adjudication in this State, but, on principle, it seems clear that this evidence is competent. If it could be shown that ten minutes before a robbery was committed the accused was penniless and that within ten minutes thereafter, he was in funds, particularly of the kind and character known to have been possessed by the deceased, that

fact, coupled with evidence showing an opportunity on the part of the accused to comit the crime in question, and that the deceased was found to have had money before the crime and none thereafter, would certainly have weight in the mind of any reasonable man, absent a reasonable explanation, as tending to identify the accused as the author of the crime. The length of time intervening between the state of poverty and the state of wealth on the part of the accused, would be a circumstance going to the weight, but not to the competency of the evidence. It has been so held in other jurisdictions. [State v. Garrington, 11 S. D. 178, l. c. 186; Garza v. State, 39 Tex. Crim. 358, l. c. 362.] We think this evidence was properly admitted.

On the whole we are convinced that the appellant was afforded a fair and impartial trial and that the evidence justified the verdict rendered against him. The judgment should be affirmed.

It is so ordered. All concur.