**STATE of Missouri, Respondent,**

**v.**

**William Arthur BALL, Appellant.**

No. 47575.

Supreme Court of Missouri,

En Banc.

Nov. 14, 1960.

Dewey S. Godfrey, St. Louis, for appellant.

John M. Dalton, Atty. Gen., Richard R. Nacy, Jr., Sp. Asst. Atty. Gen., for respondent.

BARRETT, Commissioner.

A jury has found William Arthur Ball guilty of robbery in the first degree; the jury also found prior felony convictions and, therefore, a mandatory sentence of life imprisonment was imposed. V.A.M.S. §§ 560.120, 560.135, 556.280.

The facts, briefly, as the jury could find them were that about 2:30 in the afternoon of October 15, 1958, two colored men, one of them tall and the other short, entered the Krekeler Jewelry Store at 1651 South 39th Street. The taller man spent ten or fifteen minutes selecting and buying a cigarette lighter, he also talked about buying and looked at watches and rings. As the taller man looked at jewelry and made his purchase the shorter man looked in the cases and moved about in the store. Later in the day, about 5:50, as John Krekeler was placing rings and watches in the safe preparatory to closing the store two men entered, one of them tall and the other short, and Krekeler immediately recognized them as the two men who had been in the store at 2:30, especially the taller man. He recognized the taller man's narrow-brimmed, tall hat, brown jacket, gray stirt and particularly a scar on his face. The shorter man started to walk behind the counter and as Krekeler intercepted him he "drew a long barreled blue .38 and stuck it in my face." Both men followed Krekeler, the shorter man with the gun in "his back," directing him to the watch repair department and finally into the rest room in the rear of the store. He was told not to turn around and stood facing the wall. He could hear jewelry being dumped into a bag and the "jingle" of the cash register. The two men left Krekeler in the rest room and after hearing the door slam he called the police. The two men had taken watches and rings of the stipulated value of $4,455.21 and $140 in cash from the register. Krekeler identified the appellant from pictures, and three weeks later, after his capture, in a hospital and upon the trial positively identified him as the taller of the two holdup men.

■ In his motion for a new trial one of the claims is that there was no direct evidence of an injury or any evidence to show that Krekeler was put "in fear of some immediate injury to his person," one of the essential elements of robbery in the first degree. V.A.M.S. § 560.120. Krekeler did not affirmatively testify that he was in fear but he could well apprehend injury if he did not comply with their requests and in the circumstances the jury could reasonably find "the fear" contemplated in the statute. 77 C.J.S. Robbery § 16, p. 459; State v. Thompson, Mo., 299 S.W.2d 468, 474. The element of fear being a reasonable inference from the evidence, the facts and circumstances support and warrant the finding of robbery in the first degree. State v. Eckenfels, Mo., 316 S.W.2d 532.

■ Another of the appellant's sufficiently preserved claims in his motion for a new trial (V.A.M.S. § 547.030; Supreme Court Rule 27.20, V.A.M.R.) has to do with his arrest and the testimony of the two arresting officers. On November 4, 1958, about three weeks after the robbery, police officers in a squad car saw Ball walking on Easton Avenue. The officers stopped him, told him that they were officers and that he was under arrest. As officer Powell faced and searched Ball officer Ballard "holstered" his gun and attempted "to cuff" him. Ball shoved Powell over and ran down Easton Avenue, the officers ran after him, Powell being closest. Powell yelled, "Halt Ball, you're under arrest," and fired one shot high in the air but Ball continued running and Powell fired four more shots, two at his legs, one at his buttocks, and he finally fell from a bullet in his back. It is claimed that this evidence was not material or relevant, that it was too remote from the date of the robbery to indicate a consciousness of guilt and since it was of course prejudicial

that he is entitled to a new trial. But unexplained flight and resisting arrest even thirty days after the supposed commission of a crime is a relevant circumstance (State v. Duncan, 336 Mo. 600, 611, 80 S.W.2d 147, 153), the remoteness of the flight goes to the weight of the evidence rather than to its admissibility. 20 Am.Jur., Sec. 293, p. 274.

■■ When Ball was finally subdued and arrested the officers took from his person and impounded a brown felt hat, "a brownish" windbreaker type jacket, trousers, gray shirt and shoes—these were exhibits one and two, Ball admitted that they belonged to him although his evidence tended to show that he had purchased the jacket after October 15. In identifying Ball, in addition to the scar on his face, Krekeler was impressed with and remembered the brown ensemble, particularly the "tall brown hat." These items were of course relevant and admissible in evidence and there is no objection to them. State v. Johnson, Mo., 286 S.W.2d 787, 792. The appellant objects, however, in his motion for a new trial that a police officer was permitted to testify that $258.02 in currency and two pennies were taken from his person. It is said that the introduction of these exhibits was "immaterial and irrelevant, neither tended to prove nor disprove any of the issues involved in this case; that said money as seized at the time of the arrest was neither identified by Mr. Krekeler nor by any other person as the money which was allegedly stolen from the A. L. Krekeler & Sons Jewelry Company on the 15th day of October, 1958; that said evidence was considered by this jury to the prejudice of this defendant convincingly."

The circumstances in which this evidence was introduced were these: After the clothes were identified and introduced as exhibits one and two the prosecuting attorney inquired of officer Powell, "Did you also seize his personal effects?" Defense counsel immediately objected to any testimony relating to personal effects found on the defendant "at the time." The court overruled the objection and state's counsel inquired, "Well Officer, what personal effects were seized?" Defense counsel, evidently knowing and anticipating, objected "to any testimony relevant (sic) to any personal effects seized upon this Defendant at the time he was arrested by reason of the fact it is immaterial and irrelevant and tends to neither prove nor disprove any facts involved and ask that the jury be discharged and a mistrial be declared." The court overruled the objection and the officer said, "Ball's personal effects consisted of two hundred and fifty eight dollars and two cents in cash, with the denominations of the bill(s), two one hundred dollar bills, a twenty—two twenties, a ten, a five, three ones and two pennies. He had a ladies ring and a man's wristwatch. He had a *crusifixion* along with a small pen knife and a black leather wallet. Maybe one or two other personal articles." All of these items were then marked as exhibits, from three to nine, offered in evidence and described by the officer, exhibit three being the bills and pennies comprising the $258.02. According to the officer Mr. Krekeler was unable to identify any of these articles or the money as having come from the jewelry store robbery and there is no objection in the motion to any of the items other than the money and some of them were obviously not prejudicial, for example the keys, a small penknife and wallet.

Unlike the roll of dimes in State v. Hampton, Mo., 275 S.W.2d 356, the testimony as to the $258.02 was not offered in proof of the substantive fact of the crime. In that case the five-dollar roll of dimes wrapped in a roll of green paper was found on the defendant the same day of the burglary and while the fact was a circumstance admissible in evidence it was held to not constitute substantive evidence inconsistent with the hypothesis of the defendant's innocence of burglary. In State v. Gerberding, Mo., 272 S.W.2d 230, there was no timely or proper objection to the proof but $4,000 was taken in a robbery and

the appellant had $920 in currency in his topcoat pocket when captured the day of the robbery. The proof of the money here was evidently on the theory that Ball did not have or was not likely to have such a sum of money on his person prior to the commission of the offense. 1 Wharton, Criminal Evidence, Sec. 204, p. 410. As to this the facts were that he had been out of the penitentiary about eight months and the inference the state would draw is that he had no visible means of support and no employment and could not possibly have $258.-02 except from robberies. Of course, there was no such proof and Ball claimed that he had worked intermittently for a custodian or janitor of an apartment house and that he had won the $258.02 in a series of crap games at a named place. Not only was Krekeler unable to identify the money or any of the items on Ball's person as having come from the jewelry store so that in fact they were not admissible in evidence (annotation 3 A.L.R. 1213), the charge here was that Ball and his accomplice took jewelry of the value of $4,455.21 and $140 in cash from the cash register. There was no proof as to the denomination of the money in the cash register, it was simply a total of $140. Here nineteen days had elapsed, there was no proof that Ball had suddenly come into possession of the $258.02 (annotation 123 A.L.R. 119) and in all these circumstances "The mere possession of a quantity of money is in itself no indication that the possessor was the taker of money charged as taken, because in general all money of the same denomination and material is alike, and the hypothesis that the money found is the same as the money taken is too forced and extraordinary to be receivable." 1 Wigmore, Evidence, Sec. 154, p. 601. In the absence of proof or of a fair inference from the record that the money in Ball's possession at the time of his arrest came from or had some connection with the robbery and in the absence of a plain showing of his impecuniousness before the robbery and his sudden affluence (State v. Garrett, 285 Mo. 279, 226 S.W. 4), the evidence was not in fact relevant and in the circumstances was obviously prejudicial for if it did not tend to prove the offense for which the appellant was on trial the jury may have inferred that he was guilty of another robbery. State v. Bray, Mo. App., 278 S.W.2d 49; People v. Orloff, 65 Cal.App.2d 614, 620–621, 151 P.2d 288; annotation 123 A.L.R. loc. cit. 132–134 and compare the facts and circumstances in State v. Garrett, supra. The admission of the evidence in the circumstances of this record infringed the right to a fair trial and for that reason the judgment is reversed and the cause remanded.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court en banc.

WESTHUES, EAGER, STORCKMAN and HOLLINGSWORTH, JJ., concur.

HYDE, C. J., and LEEDY and DALTON, JJ., dissent.