**STATE of Missouri, Respondent,**

v.

**James Leroy KILGORE, Appellant.**

**No. 54139.**

Supreme Court of Missouri, Division No. 2.

Dec. 8, 1969.

John C. Danforth, Atty. Gen., Gene E. Voigts, First Asst. Atty. Gen., Jefferson City, for respondent.

Willard S. Tucker, Springfield, for appellant.

HENLEY, Chief Justice.

James Leroy Kilgore, defendant, appeals from a judgment of conviction of burglary and stealing in connection with the burglary for which he was sentenced to eight and five years, respectively, in the custody of the Department of Corrections, the sentences to run concurrently.

Defendant's main point is that the court erred in overruling his motion for judgment of acquittal, because there is not sufficient evidence to sustain the conviction. Defendant admits in his brief and in oral argument that there is sufficient evidence to prove that Hough's Grocery Store located at 436 West Atlantic in Springfield, Missouri, was burglarized during the night of September 25–26, 1967, and goods and merchandise stolen therefrom, but, he contends, the evidence is not sufficient to identify him as the burglar and thief.

The evidence, in a light most favorable to the verdict, is as follows. The front door of the store was broken and entered by the forcing and breaking of two locks. At about two o'clock A.M. on September 26, a Mr. W. L. Bean, an all-night employee of a business located across the street from the grocery store, saw three persons, one a

man wearing a white T-shirt, carry boxes out the front door of the grocery and walk east on Atlantic. He called the police, reported the burglary, and within a few seconds he saw a police car turn off Main and head east on Atlantic.

Ronald Snow, a Springfield police officer patrolling a nearby area in a marked police car, received a report of the burglary by radio and proceeded toward the scene. Approximately one block east of the grocery he saw a speeding light blue 1960 model two-door Ford which he recognized as one he had previously seen defendant drive. He turned on his red light and siren and gave chase, but after pursuing the Ford for only three blocks he lost control of his car, "hit something," and his motor died. During this short chase he saw canned goods falling from the back of the Ford and he was fired at three times by someone in the Ford. He immediately radioed police headquarters and reported his accident and information that the Ford was heading north on Boonville. As soon as he was able to start his car, he again took up pursuit of the Ford and found it in a yard resting against a house it had hit at the intersection of Pierce and Talmage streets, approximately ten blocks from the scene of the burglary. Its passengers had disappeared.

George H. Brinkman, a Springfield police officer, heard the radio report of the burglary and of Officer Snow's accident and the description of the fleeing Ford. Within a few seconds thereafter he saw the Ford, " * * * sitting very low in the back * * * [with] the trunk * * * open, or bouncing open * * *," and pursued it to the intersection of Pierce and Talmage streets where it went out of control and collided with a house. Several shots were fired at him from the Ford during the chase. When the Ford struck the house its four occupants fled, three from the right door and one, the driver, wearing a white T-shirt and dark trousers, from the left. The driver scrambled over the hood and all ran south to a wooded, brushy area. Officer Brinkman alighted from his car, took his shotgun loaded with .00 buckshot, and followed these men into the woods. He fired once at the man wearing the white T-shirt as the latter turned east and once at another of the four wearing dark clothes as the latter ran southwest. He was unable to find any one of the four and returned to the Ford; it was "loaded down" with canned goods, cartons of cigarettes and other articles taken from Hough's grocery. On his return from the woods he found Beggar's Lice or Devil's Pitchforks on his trousers and socks.

Elwin R. Harmon, a lieutenant of the Springfield Police Department, heard the radio reports of the progress of the police cars pursuing the Ford and arrived at the intersection of Pierce and Talmage streets close behind Officer Brinkman. As he got out his car he took with him his shotgun loaded with .00 buckshot. He heard shots fired and saw a flash of gunfire west and south of a house at the intersection and ran in that direction. He stopped when he saw three persons, two wearing dark clothing and one in a white shirt and dark trousers, running east across Pierce approximately 40–45 yards south of him. He called to them to stop; they continued to run; he fired at the man wearing the white shirt, and believes he hit him, because, as he fired, this man hesitated for a second and bent forward slightly but kept on running. The officer ran after the men and searched through several brushy areas, but was unable to find them. During this search he found Devil's Pitchforks clinging to his clothing.

Ronald Lindsey, a Greene county deputy sheriff, and other officers, found and arrested defendant and a Margie Martin (Sonny) Wilkerson shortly after four o'clock A.M., on September 26, in a house in the 2400 block of North Kellet Street, approximately one-quarter mile from the intersection of Talmage and Pierce. Wilkerson was lying on a cot in a bedroom feigning sleep and clothed, except for shoes and shirt. Defendant was found in bed feign-

ing sleep in another bedroom. He was wearing his glasses and was fully clothed. His clothing was a white T-shirt, blue jeans, and laced-up boots.

Devil's Pitchforks were found on the trousers of both defendant and Wilkerson. Defendant's shirt had a hole in the front and back with blood-colored smears around them. On the left side of his chest, next to the hole in his shirt front, he had what Lieutenant Harmon describes as an abrasion or burn caused by a "bullet graze."

A microscopic examination and a chemical test of the shirt fabric at the site of the holes disclosed graphite similar to that used as a lubricating agent on .00 buckshot which, according to the testimony of a highway patrol laboratory technician, was left by a spherical object striking or grazing the fabric from the wearer's left side.

The Ford described above was impounded by the police and on October 7, 1967, it was released to defendant on his claim and evidence that it was his property.

Defendant offered no evidence.

This circumstantial evidence (and the inferences reasonably to be drawn therefrom) is sufficient to identify defendant as one of the participants in the burglary and stealing and, therefore, is sufficient to support the conviction. State v. Key., Mo., 411 S.W.2d 100, 102 [1]; State v. McGlathery, Mo., 412 S.W.2d 445, 448–449 [4–5].

Defendant's second point is that the court erred in " * * * not granting him a new trial upon his showing that women had been systematically excluded from the jury panel, thus depriving him of his constitutional right to a trial by an impartial jury of his peers."

The record does not support defendant's conclusion that women had been systematically excluded from the jury panel. There is no merit in the point and it is denied. State v. Dowe, Mo., 432 S.W.2d 272, 275; State v. Andrews, Mo., 371 S.W.

2d 324, 327; State v. Amerison, Mo., 399 S.W.2d 53, 55–56.

■ Defendant's third point is that the court erred in refusing his motion to suppress evidence that shots were fired from the Ford while being pursued by the police, because, he says this constituted evidence of separate, distinct offenses with which he was not charged.

He asserts, in this connection, that there is no evidence he was in the Ford at the time the shots were fired. As indicated above, a jury reasonably could find from the evidence that defendant was the driver of the Ford in its flight from the scene of the crime.

■ The general rule is that proof of the commission of separate and distinct crimes by the defendant is not admissible, unless the proof has a legitimate tendency to establish defendant's guilt of the charge for which he is on trial. If evidence of other crimes reasonably tends to prove a material fact in issue, it should not be rejected because it incidentally proves defendant guilty of other crimes. State v. Holbert, Mo., 416 S.W.2d 129, 132 [2–6].

■ Unexplained flight and resisting arrest is evidence a jury may consider as evincing consciousness of guilt, State v. Ball, Mo., 339 S.W.2d 783, 784 [2], 91 A.L.R.2d 1042, and, in the circumstances here, that is, the firing of shots from defendant's automobile at pursuing police officers during flight from the burglary in an attempt to escape apprehension is admissible in evidence, although it is also evidence of another crime. It has a legitimate tendency to establish defendant's connection with the burglary and stealing. The court did not err in overruling defendant's motion to suppress evidence.

■ In his last point defendant asserts that this case should be remanded for a new trial, because federal and state constitutional rights were violated in that the state's attorney commented in argument on his

failure to testify. The argument to which he refers is as follows: " '[Y]ou haven't heard any evidence that contradicts the second fact that Kilgore had burrs on his pants. You haven't heard any evidence that said where they came from except running through the yard out there on Pierce. * * * Now, Afton Ware told you that graphite comes for the purpose of lubricating shotgun pellets. Now, we didn't have any evidence, not one bit of proof on behalf of the defendant, that told you that anything else but—put that on there but graphite. No one testified that grease got on there in any way. No one testified that a battery was involved in tearing that hole. No one testified to anything except that it was consistent in size, both of those holes, front and back, with a shotgun pellet, .00 size. That's all the testimony that you have heard. * * * Well, there is no evidence introduced in this courtroom today to tell you that there was anything but .00 buckshot [that made the holes in the T-shirt], is there?' "

Defendant concedes he made no objection to this argument at trial and that the point he now raises was not called to the attention of the trial court in his motion for new trial. He contends the argument is plain error affecting substantial rights from which manifest injustice or a miscarriage of justice has resulted and asks us to consider the point under Sup.Ct.Rule 27.20 (c), V.A.M.R.

In cases where objection on the above ground was made to similar argument and where the objection was preserved for review by assignment of error in a motion for new trial, we have held the argument was not a comment on or reference to defendant's failure to testify, and, therefore, not error. See: State v. Craig, Mo., 406 S.W.2d 618, 624 [12]; State v. Hodge, Mo., 399 S.W.2d 65, 68 [5]; State v. Thomas, Mo., 393 S.W.2d 533, 538 [12]; State v. Siekermann, Mo., 367 S.W.2d 643 [12], and

cases cited at 651. Defendant has not demonstrated how or wherein this argument violated rights guaranteed him by the federal or state constitutions [1] or the prohibitions of the statute or rule; [2] nor has he demonstrated how or wherein it has resulted in manifest injustice or a miscarriage of justice. No error appears; hence, we decline to consider the point under Rule 27.20(c).

The judgment is affirmed.

All concur.

---

1. Fifth Amendment to Constitution of the United States; Article I, Section 19, Constitution of Missouri, V.A.M.S.

2. Section 546.270, RSMo 1959 and V.A. M.S.; Sup.Ct. Rule 26.08, V.A.M.R.