STATE of Missouri, Respondent,

v.

Squire LOGAN, Appellant.

No. WD 31347.

Missouri Court of Appeals,
Western District.

March 30, 1981.

Motion for Rehearing and/or Transfer to
Supreme Court Denied May 4, 1981.

Application to Transfer Denied
July 14, 1981.

Joseph R. Colantuono, June Clark, Kansas City, for appellant.

John Ashcroft, Atty. Gen., Jefferson City, Edward F. Downey, Asst. Atty. Gen., Kansas City, for respondent.

Before KENNEDY, P. J., SHANGLER and SOMERVILLE, JJ.

KENNEDY, Presiding Judge.

Squire Logan was convicted of first-degree robbery and was sentenced in accordance with the verdict of the jury to 16 years' imprisonment. He appeals to this court alleging three trial errors which he claims entitle him to a reversal.

The state's evidence showed that defendant, using a handgun, and Michael Mitchell, with a sawed-off shotgun, robbed a Vickers service station in Kansas City on March 6, 1979.

Defendant's first point is that the court erred in refusing to suppress a certain sawed-off shotgun found in the trunk of a car defendant had been driving, when he was arrested in Wichita, Kansas, on April 7, 1979. Defendant says the warrantless search of the car trunk by the police was unreasonable and unlawful.

The sawed-off shotgun, according to the testimony of Michael Mitchell, defendant's accomplice in the robbery in question, belonged to the defendant Squire Logan and was used by Mitchell in the perpetration of the robbery. It was found in the trunk of a green-over-white Chrysler LeBaron automobile which was located at the Wichita residence of defendant's stepbrother, Floyd Burrell, where defendant was arrested.

According to defendant's testimony on his motion to suppress, the car in question had been leased from a car rental agency in Kansas City two days before his arrest. The car had been leased by his stepsister-in-law, Ida B. Robinson, for defendant's use. Defendant himself could not rent a car because he was unemployed, but he furnished the required deposit of $150. Ida rented the car in her name, turning it over to defendant as soon as she had driven it to her home.

The car was located by Wichita police officers in pursuance of information received from the Kansas City Police Department. It was located in an alleyway near the residence of defendant's stepbrother. Defendant was arrested after a short chase.

After defendant's arrest, according to his testimony, he was seated in the police car. His brother came to the car and asked him if he had his, that is Burrell's, car keys. Defendant replied he did not. Burrell persisted. "Are you sure you don't have my car keys?", he asked. Defendant testified that he then realized that Burrell was referring to the keys to the Chrysler, which he then handed over to Burrell.

Officer Floyd Powell of the Wichita Police Department testified that after defendant's arrest—Powell did not himself make the arrest, one of his companions did—he asked Burrell if the automobile was his. Burrell replied that it was. Officer Powell asked Burrell if they could check the car "just in case there might have been some type of evidence or something in the vehicle". Burrell gave his permission, and in fact opened the trunk of the car for the officers. When he saw the sawed-off shotgun he appeared to be surprised and disclaimed ownership of it. He acknowledged ownership of a toolbox located in the car trunk, however.

■ In these circumstances, the trial court ruled correctly when he overruled defendant's motion to suppress the sawed-off shotgun. According to Officer Powell's testimony, the information which he had received was that the automobile for which they were looking would be operated by defendant's stepbrother Burrell. Burrell claimed the car as his own, and defendant cooperated with Burrell in an attempt to cause the officers to believe that the car was Burrell's and not defendant's.

Let us say *arguendo* that Burrell did not have actual authority to consent to the search.[1] He had at least apparent authority to allow it. It reasonably appeared to the police that he had such authority. *Nix v. State*, 621 P.2d 1347, 1349 (Ala.1981), and cases cited, n.9. *See also United States v. Phifer*, 400 F.Supp. 719, 733 (E.D.Pa.1975), aff'd 532 F.2d 748 (3d Cir. 1976); *Gurleski v. United States*, 405 F.2d 253, 261–2 (5th Cir. 1968); *United States v. Tussell*, 441 F.Supp. 1092, 1103–4 (M.D.Pa.1977). In investing Burrell with apparent authority, defendant willingly cooperated. The police had the right, upon consent by one whom the defendant had willingly invested with apparent authority, to proceed with the search. Defendant will not be heard now

---

1. As to validity of bailee's consent to search, see *United States v. Eldridge*, 302 F.2d 463 (4th Cir. 1962).

to say that the officers should have gotten a search warrant.[2]

■ For his second point, appellant complains of the court's denying his motion for an *in limine* order prohibiting the state from proving defendant's alleged "flight". The two "flights" referred to were that defendant was arrested in Wichita, Kansas, on April 7, 32 days after the commission of the offense on March 6, 1979. The second "flight" was that defendant attempted to flee the police when they showed up at his stepbrother's house to arrest him.

As to defendant's going from Kansas City to Wichita, where he was arrested, defendant's own testimony was that he was planning to move to Wichita, because Kansas City was "burned out for me". He was having family difficulties, he said, and had lost his van and his house. He had a stepbrother in Wichita and it was suggested to him by his parents that he go there. Only after he had gone to Wichita did he learn that he was implicated in the robbery for which he was on trial.

We do not have the prosecutor's jury argument in the transcript, and there was nothing about defendant's testimony on direct examination or on cross-examination which indicates that the state was treating this as flight which would indicate a consciousness of guilt on the part of the defendant. Defendant, as recounted in the preceding paragraph, was allowed to, and did, explain his leaving Kansas City and going to Wichita.

■ As to defendant's flight as the police approached at the time he was arrested in Wichita, Kansas, that flight is entirely admissible to show a consciousness of guilt on the part of the defendant. *State v. Kilgore*, 447 S.W.2d 544 (Mo.1969); *State v. Johnson*, 586 S.W.2d 816 (Mo.App.1979). Its weight is for the jury. *State v. Ball*, 339 S.W.2d 783 (Mo.banc 1960). Defendant was allowed to explain that he was not running

from the police. He explained that he had been throwing a leather bone to his black Belgian shepherd dog. The dog missed the bone and it was knocked over a fence. He had started over the fence to retrieve it when the officer approached, "drew down on me", and forced him to get back on the ground. The defendant was thus permitted to explain his apparent flight. The question was then for the jury to resolve and to give whatever weight they saw fit to give it. *State v. Simmons*, 494 S.W.2d 302, 305 (Mo.1973).

The defendant has cited no cases supporting his argument that the evidence was not admissible.

■ As his final point, appellant says the court erred in refusing to declare a mistrial during the state's final closing argument to the jury when the prosecutor said: "And I think that you know what a liar Squire Logan is". Defendant's attorney objected and moved for a mistrial. The court sustained the objection and only instructed the jury to disregard "the last comment of the prosecutor". Why a prosecutor will use an epithet toward a defendant, such as "liar", when it does not in the least aid the state's case or assist the jury, when the practice has been repeatedly condemned, is a mystery. *State v. Leonard*, 182 S.W.2d 548, 551 (Mo.1944); *State v. Ulrich*, 110 Mo. 350, 19 S.W. 656 (1892); *State v. Young*, 99 Mo. 666, 12 S.W. 879 (banc 1889). We conclude, not without some misgivings, that the trial court acted within his discretion in denying the mistrial, in view of his prompt and unequivocal sustention of the defense counsel's objection and his instruction to the jury to disregard the prosecutor's comment. *State v. Burnett*, 429 S.W.2d 239, 246 (Mo. 1968); *State v. Hodges*, 586 S.W.2d 420, 427 (Mo.App.1979). In a closer case on the issue of guilt, a mistrial might be required.

The judgment is affirmed.

All concur.

---

2. We do not need in this case to decide if evidence must be suppressed which is discovered upon a warrantless search, consented to by a third person who does not have actual authority but who reasonably appears to the police to have authority to give such consent, where the defendant was not complicit in investing the third person with apparent authority. *See United States v. Matlock*, 415 U.S. 164, 178 n.14, 94 S.Ct. 988, 996, n.14, 39 L.Ed.2d 242 (1974); *Nix v. State, supra*.