

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | WD85397 |
| v. | ) | |
| | ) | OPINION FILED: |
| | ) | November 21, 2023 |
| MATTHEW RYAN ROUNER, | ) | |
| | ) | |
| Appellant. | ) | |

**Appeal from the Circuit Court of Livingston County, Missouri**
**The Honorable Ryan W. Horsman, Judge**

**Before Division Two:** Mark D. Pfeiffer, Presiding Judge, and
Alok Ahuja and Thomas N. Chapman, Judges

Mr. Matthew Rouner ("Rouner") appeals from the judgment entered by the Circuit Court of Daviess County, Missouri ("trial court"), following a jury trial in which he was found guilty of one count of the class D felony of stealing, § 570.030, and one count of the class A misdemeanor of stealing, § 570.030. He challenges the sufficiency of the evidence to support his conviction of the class A misdemeanor offense. We affirm.

## Facts and Procedural History[1]

On May 31, 2020, Rouner's adoptive mother ("Mother") and father ("Father") left their home around 8:00 a.m. to attend a Sunday service at their church. On their way back home, around 10:00 a.m., they stopped to get gas. As Father was opening the gas cap, he received a call from his neighbor—their home was engulfed in flames. Mother and Father sped home and saw firefighters struggling to contain the blaze as the water from their hoses evaporated before it could hit the flames. Father called off their efforts and watched as the home burned to the ground. At this time, Father noticed his maroon Ford F-150 was missing from its usual spot in the driveway and asked firefighters if they had moved it. The firefighters responded that no truck was in the driveway when they came onto the scene. Father immediately suspected that Rouner, who had been raised in the home and knew both the family's consistent habit of attending church every Sunday morning and where Mother kept her jewelry, had stolen his truck and reported the theft to the responding sheriff's officer ("Sheriff").

Members of the Rouner family and Sheriff, sifted through the ashes one week later. Much of the property inside the house was destroyed. But Father discovered that several items had been taken from the home before it burned down because they were not among the other burned remains. Several pieces of jewelry were missing, notably Mother's wedding rings, her charm bracelet, and a Lions Club pin.

---

[1] "On appeal from a jury-tried case, we view the facts in the light most favorable to the jury's verdict." *State v. Demark*, 581 S.W.3d 69, 73 n.2 (Mo. App. W.D. 2019) (internal quotation marks omitted).

A few days later, Informant 1, who knew Rouner personally, reached out to a Bureau of Alcohol, Tobacco, and Firearms Task Force Officer ("ATF Agent")[2] assisting with the investigation to provide information on the stolen truck. During an interview, Informant 1 provided ATF Agent the name of Informant 2.

On June 8, 2020, Informant 2 called ATF Agent and informed him that Rouner was currently at a particular car wash in Wyandotte County, Kansas. ATF Agent drove to the location in an unmarked ATF vehicle along with another unmarked ATF vehicle and multiple marked police cars. When ATF Agent arrived at the car wash, he spotted Rouner standing beside a black Dodge pickup truck. As Rouner got inside the truck, officers in the marked police cars activated lights and sirens and approached him. Rouner attempted to flee the scene by driving over the parking lot curb and towards a wooded area. In the process, he hit one of the unmarked ATF vehicles, revealing maroon underneath the black paint. Rouner's truck came to a stop, and Rouner ran through the wooded area before officers on foot apprehended him on another nearby street. Two female passengers were also in the truck.[3] The truck was towed and then impounded until it could be searched pursuant to a warrant.

That night, Sheriff learned Rouner had been taken into custody in Kansas City and left to interview him. Rouner signed a Miranda waiver and then proceeded to tell Sheriff a fantastical story in which he claimed that he came into possession of Father's truck

---

[2] ATF Agent was also a reserve deputy with the Daviess County Sheriff's Office at the time. Sheriff requested his assistance on the case.

[3] No evidence suggests these women had any connection to the Rouner family or had any knowledge of the Rouner family's home or habits.

while acting as a middle man selling vehicles stolen by the Sinaloa Cartel. Rouner told Sheriff that he received a picture of what he recognized to be Father's maroon truck, spray-painted black and claimed that he was able to run the truck's Vehicle Identification Number ("VIN") through an online VIN checker[4] to see if it had been reported stolen. Rouner claimed that this check confirmed the truck was reported stolen, so he decided to purchase it with the intent of cleaning it and returning it to Father. Clearly, the jury placed no credibility in Rouner's cartel story.

A week later, Sheriff received a warrant to search the recovered truck. Sheriff confirmed the truck belonged to Father by cross-referencing its VIN with the National Crime Identification Center ("NCIC") database. Contrary to Rouner's claim that he spent hours cleaning the inside of the vehicle to return it to Father, it was filthy and in complete disarray. The interior looked as if someone had been living out of the truck: floorboards covered in dirt and trash, men's and women's clothes strewn about the cabin, and food waste sitting in the center console. In a Crown Royal bag on the floor, Sheriff found the truck's keys, bullets, passports, and jewelry. More jewelry was found in several compartments throughout the truck. Mother identified the jewelry as hers. Her wedding rings and the Lions Club pin were never recovered.

On March 26, 2022, Rouner was charged by third amended information with, among other things, class A misdemeanor stealing for stealing jewelry valued over $150

---

[4] According to Sheriff, stolen vehicle reports are available *only* through the National Crime Identification Center ("NCIC"), a secure database that only law enforcement can access.

pursuant to section 570.030.[5]  The class A misdemeanor stealing provision applies to property with a valuation between $150.00 and $749.99.  § 570.030(8).  On the charged information, the trial court found beyond a reasonable doubt that Rouner was a prior and persistent offender and conducted a jury trial on March 30-31, 2022.

At trial, Father testified that he spent between $300 and $400 replacing Mother's wedding rings and that he purchased the rings for more than $150 when he married Mother in 1973.  Father believed the wedding rings were worth more than $150 but could not place a price on the Lions Club pin because of its rarity.  At the close of the State's evidence, and again at the close of all evidence, Rouner's counsel moved for judgment of acquittal on the basis that Father only testified to the replacement value,  not the actual value, of Mother's jewelry.  The trial court overruled both motions.  The jury found Rouner guilty beyond a reasonable doubt of class A misdemeanor stealing as charged and sentenced Rouner to one year in jail for that count.  Rouner timely appealed.

## Standard of Review

> When reviewing the sufficiency of the evidence to support a conviction and a trial court's denial of a motion for judgment of acquittal, we do not re-weigh the evidence.  Instead, we "accept as true all evidence tending to prove guilt together with all reasonable inferences that support the verdict, and ignore all contrary evidence and inferences."

*State v. Gehring*, 599 S.W.3d 526, 529 (Mo. App. W.D. 2020) (citations omitted) (quoting *State v. Martin*, 575 S.W.3d 764, 767 (Mo. App. W.D. 2019)).  "The assessment is not whether this Court believes that the evidence established guilt beyond a reasonable

---

[5] All statutory references are to the REVISED STATUTES OF MISSOURI, 2016, as supplemented.

5

doubt but, rather, whether, in light of the evidence most favorable to the verdict, any rational fact-finder could have found guilt beyond a reasonable doubt." *Id.* (quoting *Martin*, 575 S.W.3d at 764).

## Analysis

In his sole point on appeal, Rouner asserts the trial court erred in overruling his motions for judgment of acquittal, and in imposing judgment and sentence, because the State did not produce sufficient evidence for the jury to find beyond a reasonable doubt that Rouner stole the jewelry and that the jewelry had a value exceeding $150.

Pursuant to section 570.030, a person is guilty of stealing if he or she "[a]ppropriates property or services of another with the purpose to deprive him or her thereof, either without his or her consent or by means of deceit or coercion[.]" § 570.030.

Rouner argues the State failed to prove he stole the jewelry as a principal actor because he was captured with two female passengers "that were also in joint possession of the items found in the 2008 Dodge Ram." But, "Missouri law no longer recognizes any distinction between principals and accessories; it is now the law that all persons who act in concert are equally guilty." *State v. Davidson*, 521 S.W.3d 637, 644 (Mo. App. W.D. 2017) (internal quotation marks and citations omitted).

Further, Rouner has produced no case law showing that the presence of other individuals in proximity to the stolen jewelry prohibits his conviction under section 570.030.[6] Viewing the evidence in the light most favorable to the verdict, the State

---

[6] "When an appellant cites no authority and offers no explanation why precedent is unavailable, appellate courts consider the [argument] waived or abandoned." *Grant v. Sears*, 379 S.W.3d 905, 917 (Mo. App. W.D. 2012) (alteration in original) (internal

proved that: (1) Father's truck and Mother's jewelry were reported missing from the Rouner home; (2) Rouner was found in possession of Father's disguised truck shortly after the truck and jewelry were reported missing; and (3) the missing jewelry was discovered inside the disguised truck that Rouner possessed.

Rouner's unexplained[7] recent[8] possession of the truck and jewelry is clearly relevant to the submissibility of the jewelry stealing charge to the jury. *State v. Kennon*, 123 S.W.2d 46, 47 (Mo. 1938) ("[t]he law is well established that the recent unexplained possession of stolen property warrants an inference that the possessor was the thief") (upholding a jury's stealing conviction based on an appellant's unexplained possession of a hog on the same day the hog was reported missing); *see also State v. Gibson*, 812 S.W.2d 521, 524 (Mo. App. E.D. 1991) (applying unexplained possession inference to section 570.030); *State v. Chunn*, 701 S.W.2d 578, 583 (Mo. App. S.D. 1985) (same).

---

quotation marks omitted). Even if not waived, the verdict is well supported for reasons explained herein. The only case cited by Rouner, *State v. Gibson*, 812 S.W.2d 521, 524 (Mo. App. E.D. 1991), stands for the proposition that guilt can be inferred from possession—an inference that we fully discuss below.

[7] The word "unexplained" is a bit of a misnomer in context. The inference is not dispelled just because Rouner tendered an explanation of how he came into possession of the jewelry. As long as his explanation was disbelieved by the jurors "his possession stands as if unexplained" for purposes of applying the inference. *State v. Chunn*, 701 S.W.2d 578, 584-85 (Mo. App. S.D. 1985); *State v. Ryun*, 784 S.W.2d 636, 638-39 (Mo. App. W.D. 1990) ("His explanation that he purchased the recently-stolen items and received from the seller an unavailable bill of sale was for the jury to accept or reject."). Such inference is also not violative of Rouner's due process rights. *State v. Brown*, 744 S.W.2d 809, 811 (Mo. banc 1988) ("the inference does not violate due process or infringe upon a defendant's privilege against compulsory self-incrimination, even when the inference is not bolstered by other evidence").

[8] Twelve days has been held "recent" enough for the unexplained possession inference to attach. *See, e.g., State v. Robb*, 439 S.W.2d 510, 512-13 (Mo. 1969).

This inference combined with other circumstantial evidence can support a stealing conviction. *See State v. Brown*, 744 S.W.2d 809, 811 (Mo. banc 1988) ("[W]e have consistently recognized that the inference to be drawn from the circumstances referred to is not a presumption of law, but is a permissible inference of fact which the jury may accept if convinced beyond a reasonable doubt of the defendant's guilt."); *see also Gibson*, 812 S.W.2d at 524 ("such evidence is sufficient to support a submission of . . . stealing to the jury"); *Chunn*, 701 S.W.2d at 583 (same).

Here, ample circumstantial evidence supports Rouner's stealing conviction. Rouner was found in possession of jewelry from his childhood home. Unlike his fellow female passengers, Rouner knew where Mother kept her jewelry and knew when the home would be vacant due to Mother and Father's church schedule. In addition to this knowledge, Rouner was found washing Father's truck (now a different color), which Father immediately suspected Rouner of stealing when the truck disappeared from the driveway. Finally, when confronted, Rouner attempted to flee the scene and resist arrest, actions which can be considered by a fact finder as "evincing consciousness of guilt." *State v. Kilgore*, 447 S.W.2d 544, 547 (Mo. 1969); *Chunn*, 701 S.W.2d at 585 (same).

On this record, a jury could infer Rouner stole the truck and jewelry during the church service and attempted to deceive law enforcement by painting the truck, rather than believing Rouner's dubious explanation that he came to possess the truck from the cartel. Put simply, "it was permissible for the jury to draw an inference of guilt from

8

[Rouner's] unexplained possession of property recently stolen from [his childhood] home." *State v. Bowen*, 523 S.W.3d 483, 488 (Mo. App. E.D. 2017).[9]

Turning to the question of valuation, "Section 570.020 defines value as 'the market value of the property at the time and place of the crime, or if such value cannot be satisfactorily ascertained, the cost of replacement of the property within a reasonable time after the crime.'" *State v. Johnson*, 461 S.W.3d 842, 844 (Mo. App. E.D. 2015) (quoting § 570.020(1)). Father testified that he paid at least $150 for the missing wedding bands and that the replacement cost was between $300 and $400. Based on this testimony, the jury could have found the value of the rings easily exceeded $150.

Rouner takes issue with Father being the only witness to testify to the jewelry's value, but "an owner's opinion of an item's worth can constitute substantial evidence of its value under Section 570.020." *Johnson*, 461 S.W.3d at 845 (citing *State v. Slocum*, 420 S.W.3d 685, 687 (Mo. App. E.D. 2014)); *see also State v. Petalino*, 890 S.W.2d 679, 683 (Mo. App. W.D. 1994) ("An owner's opinion of the value of stolen goods is sufficient to submit the issue to a jury."). In such instances, "[t]he jury determines the weight and sufficiency of an owner's testimony estimating an item's value, and we defer to that determination." *Johnson*, 461 S.W.3d at 845 (internal citation omitted).

Rouner's point on appeal is denied.

---

[9] Rouner additionally argues that because the jury did not convict on the charge of burglary that the elements of stealing cannot be met. But, a burglary acquittal and stealing conviction are not inconsistent. *See State v. Jones*, 358 S.W.2d 782, 784 (Mo. 1962) ("Neither may the defendant complain that the jury chose to find him guilty of stealing only but not burglary.").

**Conclusion**

The judgment of the trial court is affirmed.

_____
Mark D. Pfeiffer, Judge

Alok Ahuja and Thomas N. Chapman, Judges, concur.