Sam GOULD and Lucy Gould, Plaintiffs-Respondents,

v.

George L. KENNEYMOORE and Jean Kenneymoore, Defendants-Appellants.

No. 47927.

Supreme Court of Missouri,

Division No. 1.

Nov. 14, 1960.

Butler Disman, Herbert Jacob, Kansas City, for plaintiffs-resondents.

Marion D. Waltner, Kansas City, for defendants-appellants, Clarence C. Chilcott, Kansas City, of counsel.

WESTHUES, Presiding Judge.

This is a suit to enforce specific performance of a contract to sell real estate. The trial court granted the relief prayed for and the defendants appealed.

The contract sought to be enforced was dated January 21, 1958, and involved property known as 2107 Brooklyn Street, Kansas City, Jackson County, Missouri. The consideration was $8,000. The property was covered by a deed of trust securing the payment of a note of about $3,600 made payable to the Home Federal Savings and Loan Association. Plaintiff Sam Gould had, prior to 1958, engaged in the business of operating parking lots in the neighborhood of the ball park used by the American League baseball teams. The purpose for which Sam Gould desired the property in question (located near the park) was to extend his parking facilities.

In the answer, defendants stated that they were uneducated, inexperienced, and unfamiliar with real estate values; that plaintiff Sam Gould by "high Pressure" talk induced plaintiffs to sign the sales contract; that the property was actually worth $15,500; that the representation made by Sam Gould concerning the value of the property was false and that plaintiffs were defrauded. Defendants further alleged that the description of the property in the contract embraced more land than defendants owned.

Defendants filed a counterclaim wherein they asked the court for a judgment in the sum of $7,500 actual damages on the theory that the present suit deprived them of accepting a bid of $15,500 for the property. Defendants further ask $7,500 in punitive damages.

This is a nonjury case and is therefore reviewable on the merits by an appellate court. Our examination of the record and the evidence has convinced us that the trial court's judgment enforcing the contract was fully justified.

The major portion of the following statement of facts has been taken from the defendants' evidence. Defendants purchased the property in 1944 for $2,000 and lived there up to the time this case was tried. Defendants did not claim that any substantial improvements were made. In December, 1957, plaintiff Sam Gould called defendants by telephone and inquired if their property was for sale. Mrs. Kenneymoore informed him that it was not. Gould gave defendants his telephone number and told Mrs. Kenneymoore that in case they changed their minds to call him. Later, in

January, 1958, Gould again talked with the defendants by telephone and an appointment was made for Gould to come to the Kenneymoore home to talk about a sale of the property. Mrs. Kenneymoore testified that she told Gould the sale price was $16,000. Gould stated that $14,000 was asked. After some discussion, Gould informed defendants that $8,000 was his top price and that the property was not worth more and if anyone offered more he was just fooling.

A daughter of the defendants, who was present at this meeting, advised her parents that they had better see a lawyer but Mrs. Kenneymoore stated plaintiff Sam Gould claimed he knew the values of real estate and that she relied on his statements. Gould denied that he, as the Kenneymoores claimed, advised against seeing a lawyer.

The Kenneymoores admitted foreclosure proceedings had been threatened and that they needed money to make a payment on their indebtedness. After some negotiation, a contract of sale was signed and Gould gave the defendants $300 as a down payment.

The building was to be torn down so the defendants requested permission to remove some fixtures from the home. This they did. Further, the defendants endeavored to purchase a home but were unable to obtain sufficient money to make the deal. Demand was made a number of times on the defendants to comply with their contract of sale to Gould. No definite answer was made to these demands. Later, a tender of the purchase price was made which the defendants refused; whereupon this suit was filed.

The reason given at the trial for refusing to comply with the contract was stated by Mrs. Kenneymoore as follows:

"Q. Now, is it true that you are now refusing to go through with this contract? Are you refusing now to go through with the contract? A. Yes.

"Q. Tell his Honor why. A. Well, one thing, after talking, and reading, and getting understanding. I didn't understand it. One thing, he got more land on here than we got. We didn't have that much land, and another thing, my husband don't have anywhere to put his trucks, and his cars, and the money that we would be getting out of the place would not be enough to buy no place for him to put his stuff."

Mr. C. S. Ehinger testified for the defendants. He stated that in April, 1958, which was more than two months after the contract now before the court was signed, he offered defendants $12,500 for the property. The evidence showed that Ehinger owned property near the ball park which was used as a parking lot and he wanted to use this property for the same purpose.

Mr. Kenneymoore testified that he had had twenty-five people call about purchasing the property. Many of these calls were made before the present contract was signed. He further testified that in 1952 Mr. Ehinger told him "if I wanted to sell he would buy."

Evidence was offered by the defendants that the property was worth $14,000 to $16,000. Plaintiffs offered evidence that $8,000 was a fair price.

There was no confidential relationship between plaintiffs and defendants. Defendants knew Sam Gould desired to purchase the property to enlarge his parking space. It was natural that he would want to buy the property at the lowest figure possible. Defendants, having had many calls from prospective buyers and having been told by Mr. Ehinger that he desired to purchase the property at any time, certainly had ample opportunity to determine the value of their home. Furthermore, the evidence warrants a finding that $8,000 was not an unusually low price for the property. In the circumstances, the evidence does not justify a finding of fraud on the part of Sam Gould. 37 C.J.S. Fraud § 57, p. 334; Orlann v. Lae-

derich, 338 Mo. 783, 92 S.W.2d 190, loc. cit. 197(8–10).

Defendants' points and authorities, omitting citations, are as follows:

"I. The Court Erred in Not Dismissing This Case at the Close of Plaintiffs' Evidence, and at the Close of All the Evidence, Because of the Violation of Plaintiff Sam Gould of the Maxims of Equity.

"The plaintiff exercised every artifice and deception, and persistent solicitation upon the defendants to mislead them as to the value and marketability of their property."

"II. Plaintiffs Do Not Come into a Court of Equity with Clean Hands."

What we have said should be sufficient to dispose of the points briefed which, in fact, present but one question: Was Sam Gould guilty of fraud? To hold Sam Gould guilty of fraud it would be necessary to say that the contract price was substantially inadequate. The evidence does not justify such a finding. Ehinger's offer of $12,500 was made by a competitor of Gould. It was made after the contract of sale in question had been executed. The evidence justified a finding that Ehinger had knowledge of the fact that the contract had been signed. In such circumstances, the evidence of the offer was of little weight. Furthermore, the Kenneymoores had had numerous calls with reference to whether they wished to sell their property. They certainly gave much thought to the value of their property. Mr. Kenneymoore was in the truck business. The daughter, Helen K. Thompson, who lived with her parents, was a medical technologist. She was a high school graduate, had had 3 years of college work, and had been employed in hospitals in St. Louis and Kansas City. She had also been employed by doctors. The plea that defendants were uneducated and inexperienced was not supported by evidence. In such circumstances, it is difficult to conceive how the defendants could have been misled as to the value of their home.

Cases cited by defendants, such as Ellison v. Wood Garment Company, Mo.App., 286 S.W.2d 27, are not in point. In the Ellison case, an oral contract of sale was sought to be enforced. The court held the alleged contract had not been proven. Defendants cited 30 C.J.S. Equity § 97, 487. It is there stated that the defense of unclean hands need not be pleaded. We have no quarrel with that statement. Defendants claim that plaintiff Sam Gould's conduct was such that he is not entitled to equitable relief. The evidence in this case does not support the defendants' contention.

Defendants did not brief the point but in their answer it was stated that more property was included in the contract than the defendants owned. That fact was admitted. However, plaintiff Sam Gould and the defendants testified that it was understood that the home and nothing more was considered by anyone. Defendants showed Sam Gould the property line before the sales contract was signed. The description by lot number included all of defendants' land and more. The description concluded with the statement "commonly known and numbered as 2107 Brooklyn Street, Kansas City, Jackson County, Missouri." The error in describing more land was immaterial under the facts of this case.

We rule that the decree of specific performance entered by the trial court should be and is hereby affirmed.

All concur.