**STATE of Missouri, Plaintiff-Respondent,**

**v.**

**George VERNOR, Defendant-Appellant.**

**No. 36145.**

Missouri Court of Appeals,
St. Louis District,
Division Four.

April 15, 1975.

---

Charles D. Kitchin, Public Defender, Thomas J. Prebil, James C. Jones, Asst. Public Defenders, St. Louis, for defendant-appellant.

John C. Danforth, Atty. Gen., Preston Dean, Asst. Atty. Gen., Charles B. Blackmar, Sp. Asst. Atty. Gen., St. Louis, for plaintiff-respondent.

NORWIN D. HOUSER, Special Judge.

George Vernor, convicted by a jury of robbery by means of a dangerous and deadly weapon and sentenced under the Second Offender Act to 17 years' imprisonment, has appealed.

On September 12, 1973 one Frank Putney, a clerk in an A & P store in the City of St. Louis, noticed a white Mercury automobile come into the parking lot. Two Negro males got out of the car. Their actions and demeanor aroused his suspicions. The engine of the automobile was left running. Putney made a note of the license number. The two men entered at the front and walked the length of the store to the manager's office. One of them, later identified as this defendant, climbed over a ledge and entered the office of Donald Buhr, assistant manager. The other man, armed with a shotgun, remained outside the office. Defendant had a black revolver. He took money out of the cash drawer, ordered Buhr to lie down on the floor, left the office, proceeded to one of the check-out counters, ordered the clerk to lie down on the floor and took money out of the cash register. Then both men left the store. A total of about $800 in cash was taken. Buhr called the police. When the police arrived Putney gave them the license number.

On September 13, 1973 police officers went to the home of Mrs. Ozel Washington, owner of the automobile, and arrested her on a charge of robbery. Mrs. Washington testified to the following set of facts as a witness for the State: While driving on Delmar she saw defendant and another, both of whom she had previously seen at parties, standing at a bus stop. At their request she took them to the A & P store in question, where she parked and stayed at her car while the two entered the store. They were gone long enough to pick up a couple of items and check out. They came out walking, not running. She did not know what was going on. They did not tell her what they had done until just before they got out of the car, at which time they told her about the robbery ("heist" as she termed it). Defendant gave Mrs. Washington a brown bag, which she did not look at until she got home. The bag contained about $250 in "bills wrapped up." She had the money when the officers arrested her. The police took her downtown, where she "told them everything." She was charged with armed robbery, as the driver of the getaway car. The charges against her were dismissed when she turned State's evidence.

On September 14, 1973 five police officers went to a residence located at 1253 Amherst Street where, without an arrest search warrant, they knocked on the door, observed defendant at a second story window, told him he was under arrest and ordered him to open the door. He refused to do so. They forced the door open and found him sitting upon a bed, front room, second story. They placed him under arrest, handcuffed him and searched the entire premises, consisting of three rooms in addition to the front room where defendant was arrested. One officer found and seized five shotgun shells from the top of a dresser in the bedroom. Cash in the amount of $83.50 was taken from defendant's pants pocket. These items were the subject of a motion to suppress, heard and overruled prior to trial. They were admitted in evidence at the trial, over objections that they were seized in the course of an illegal search and seizure; that the $83.50 had no probative value because it is currency and there is "no possible way they can tell this currency from any other currency."

Appellant's first point is that the court erred in admitting the cash in evidence because it was irrelevant, immaterial, of no probative value and clearly prejudicial because it raised the inference that it was taken at the time of the robbery. Appellant cites State v. Roswell, 153 Mo.App. 338, 133 S.W. 99 (1910), a larceny case. Roswell was charged with stealing $10, the property of one Sorrells. The State proved that a $10 bill was in Sorrells' pocketbook, which disappeared from his pocket when pushed by defendant as he was boarding a streetcar, but there was no specific proof as to the ownership of the $10 bill. The conviction was reversed for insufficiency of proof of an essential element of the offense of larceny, namely, proof of ownership of the $10 bill. This case was severely criticized by the Supreme Court, which disagreed with the conclusion reached by the court of appeals, as "opposed to the universal experience of mankind." The Supreme Court reasoned

that ordinary possession of money, in the absence of proof to the contrary, is sufficient evidence of ownership in the possessor. State v. Starr, 244 Mo. 161, 148 S.W. 862, 864–865[3] (1912).

More to the point is State v. Ball, 339 S.W.2d 783 (Mo. banc 1960), in which the Supreme Court reversed an armed robbery conviction for improper admission of testimony that defendant had $258.02 in cash on his person when arrested. A jewelry store was robbed of jewelry worth $4,455 and $140 in cash. Officers found a lady's ring, a man's wristwatch and $258.02 in cash on defendant's person when arrested 19 days after the robbery. The jeweler could not identify either the jewelry or the money as having been taken in the robbery. There was no proof of "sudden affluence"—that defendant had suddenly come into possession of the $258.02. In these circumstances the Court applied the rule that "The mere possession of a quantity of money is in itself no indication that the possessor was the taker of money charged as taken, because in general all money of the same denomination and material is alike, and the hypothesis that the money found is the same as the money taken is too forced and extraordinary to be receivable." 1 Wigmore on Evidence, Sec. 154, p. 601. Continuing, the Court said, "In the absence of proof or of a fair inference from the record that the money in Ball's possession at the time of his arrest came from or had some connection with the robbery and in the absence of a plain showing of his impecuniousness before the robbery and his sudden affluence (State v. Garrett, 285 Mo. 279, 226 S.W. 4), the evidence was not in fact relevant and in the circumstances was obviously prejudicial for if it did not tend to prove the offense for which the appellant was on trial the jury may have inferred that he was guilty of another robbery. [Citing cases.] The admission of the evidence in the circumstances of this record infringed the right to a fair trial * * *." 339 S.W.2d 786.

In State v. Hampton, 275 S.W.2d 356 (Mo. banc 1955), the defendant was con-

victed of larceny. Thirty dollars in cash, including a $5 roll of dimes wrapped in green paper, and 6 quarts of whiskey were stolen from a tavern. Defendant's fingerprint was found on a bottle of whiskey near the place from which the 6 bottles had been removed. Defendant was arrested the same day the larceny occurred. On his person was found a $5 roll of dimes, wrapped in the same colored paper as the missing roll and like those normally used by banks to wrap dimes. This was a circumstantial evidence case and the Supreme Court held that the finding of the roll of dimes was a circumstance admissible in evidence, but since there was no evidence sufficiently identifying the roll of dimes as that taken from the tavern the circumstance was not substantial evidence inconsistent with a reasonable hypothesis of defendant's innocence.

In State v. Britt, 504 S.W.2d 38 (Mo. 1973), $300 was taken in an armed robbery by two men who escaped in a Buick automobile with a "bashed in" front end. A few hours later the Buick was found, its occupants arrested and searched. Defendant had $50 in his possession. The total amount found on all occupants of the car was $301.29. Part of the money taken consisted of coins in green wrappers. A green dime coin wrapper was found in the front seat of the Buick. The denominations of the paper money corresponded with the description of the missing money (none over $20). A patrolman was permitted to testify over objection that when arrested the occupants of the car, including defendant, had a total of $301.29 upon their persons. On appeal it was contended that this evidence was irrelevant and prejudicial. The Supreme Court held the evidence admissible, reciting that the evidence showed these people were together in the car prior to the robbery; that the two who committed the robbery escaped in that car; that they were arrested in the car 2½ hours later with the same group of people; that a coin wrapper of the type taken was found in the car. The Court, citing State v. Hampton, supra, said, 504 S.W.2d l.c.

42, "In view of the close time element, and the connection of the car and its occupants with the robbers, we do not think it was wholly irrelevant to show that the car occupants had in their possession a sum of money of approximately the amount taken in the robbery."

In the case for review the amount taken in the robbery was $800, of which $250 was left with the driver of the getaway car, so there was $550 to split. Assuming they divided it equally and each received $275, the amount found on defendant's person when arrested two days later ($83.50) was a little less than one third, which is of little significance in attempting to associate the $800 and the $83.50. Eighty-three dollars and a half in a time of inflation could hardly be considered enough to constitute "affluence." There was no evidence of previous impecuniousness. There was no identification of the money—no associated identifying object, such as the coin wrapper in two of the above cases. The time period between robbery and arrest was two days, not two hours as in Britt. There simply was no evidence of any connection between the $83.50 and the $800 taken from the A & P store. All that is shown is that appellant was in possession of an unconnected, unidentified $83.50 two days after the robbery. In the light of the decided cases the evidence with respect to the $83.50 was irrelevant, immaterial, of no probative value, and it should have been excluded. An error in the admission of evidence, however, does not necessarily call for a reversal of a conviction. Only prejudicial error is reversible error. State v. Gibson, 502 S.W.2d 310, 314[2] (Mo.1973). A defendant claiming error in the reception of evidence has the burden of showing both error and prejudice. Appellant does not point out why and in what manner this evidence was prejudicial, except to say that its prejudicial effect is manifest. In such case the conviction is not required to be reversed because of the admission of evidence. State v. Fitzgerald, 174 S.W.2d

211, 215[12] (Mo.1943). Under the circumstances of this case there was no reasonable basis for the jury to have inferred from the fact that he had $83.50 in his pocket that appellant was guilty of another robbery. Quoting from appellant's brief, "From all that appears, the money simply belonged to defendant." Error which in a close case might call for a reversal may be disregarded as harmless where the evidence of guilt is strong. Thomas v. United States, 281 F.2d 132 (8th Cir. 1960), cert. den. 364 U.S. 904, 81 S.Ct. 239, 5 L. Ed.2d 196. The State made a strong case. Appellant was identified by three employees of the A & P store and the testimony of Mrs. Washington, an actual participant in the crime (albeit an unknowing participant, according to her), who positively incriminated appellant. The error in admitting evidence that $83.50 was found on appellant's person when arrested was harmless.

■ Appellant's second point is that the court erred in admitting the $83.50 in evidence "because the arrest of the defendant was illegal and thus the property taken from him was inadmissible." Appellant contends there was insufficient probable cause for the officers to believe that appellant had participated in the robbery; that under Whiteley v. Warden, Wyoming State Penitentiary, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1970), it was necessary for the officers to have factual data tending to corroborate the informer's tip that appellant had committed the crime. There is more than an informer's tip in this case. Mrs. Washington was a participant in the crime—an eyewitness to the entry and exit of appellant from the store. She heard appellant admit the "heist." She retained a portion of the loot, given her for providing transportation for the actual robbers. Her statement to the police was not based upon suspicion, rumor or hearsay. It was not a mere conclusion. The information she gave the police led directly to appellant. Clearly under State v. Perry, 499 S.W.2d 473 (Mo.1973), there

was sufficient basis for the officers to reasonably give credence to the information supplied to them. See also United States v. Trice, 476 F.2d 89 (9th Cir. 1973); People v. Wright, 56 Ill.2d 523, 309 N.E.2d 537 (1974). Finally, as previously determined, the admission of the $83.50 in evidence was harmless and nonprejudicial, which renders immaterial any question with respect to the validity of the arrest, search or seizure.

■ Appellant's third point, that the court erred in not instructing the jury in the form specified by MAI–CR No. 1.08 at the final recess, is without merit. Instead of giving MAI–CR No. 1.08(b) as follows:

"The Court again reminds you of what you were told at the first recess of the court. Until you retire to consider your verdict, you must not discuss this case among yourselves or with others, or permit anyone to discuss it in your hearing. You are not to form or express any opinion about the case until it is finally give to you to decide,"

the court gave the following instruction:

"We are going to submit it to you first thing tomorrow morning at 9:30, so keep in mind the admonition I have been talking about. Don't talk to anybody about this case. Don't permit anybody to talk to you about it. If anybody does, report that back to the Court immediately."

MAI–CR No. 1.08(b) is substantially the same as the admonition required in pre-MAI days by § 546.230, RSMo 1969, V.A. M.S. Absolute and literal application of that statute was not required by the Supreme Court; substantial compliance was tolerated. State v. Brown, 502 S.W.2d 295[5, 6] (Mo.1973); State v. Harris, 477 S.W.2d 42, 46[6] (Mo.1972). The requirements under MAI–CR are more stringent than under § 546.230. Absolute and literal compliance with MAI–CR is ordered and expected by the Supreme Court. Any deviation from the printed page now constitutes error, the prejudicial effect of which

is to be judicially determined. Rule 20.-02(e). For the same reasons excusing literal compliance with § 546.230 in State v. Brown, supra, we find the error harmless in this case.

Judgment affirmed.

SMITH, C. J., and ALDEN A. STOCKARD, Special Judge, concur.