STATE of Missouri,
Plaintiff-Respondent,

v.

Larry SUTTON, Defendant-Appellant.

No. 47925.

Missouri Court of Appeals,
Eastern District,
Division Seven.

Oct. 22, 1985.

Cornelius T. Lane, St. Louis, for defendant-appellant.

John Munson Morris, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

DONALD E. DALTON, Special Judge.

Defendant was convicted by a jury of stealing by deceit, a Class C Felony. On finding a prior felony conviction, the court sentenced defendant to serve three years. Defendant appeals and we affirm.

Defendant raises three claims of error:

1) The state failed to make a submissible case of stealing over $150 by deceit because they failed to prove that the insurance check was cashed;

2) A mistrial should have been declared when the prosecutor asked defendant on cross-examination whether after his arrest he made a statement to the police; and

3) The giving of the "hammer" instruction over defendant's objection.

Prior to January 8, 1981, defendant and Michael Jett reached an agreement whereby Jett was to burn defendant's 1975 Ford pickup truck and receive $200.00 for his efforts. Jett was to be paid when defendant received the insurance proceeds. On January 8, 1981, defendant and a woman named Melissa met Jett at a service station in St. Louis County. Defendant remained at the service station while Jett drove an automobile and Melissa drove defendant's truck to Mullins Cave. Jett set fire to defendant's truck. He and Melissa then returned to the service station in the automobile and met defendant. Jett drove defendant to a shopping center where defendant made a stolen vehicle report to the St. Ann Police Department.

Defendant reported his vehicle stolen to his insurance company on January 9, 1981. The theft claim was settled on January 20, 1981. On January 22, 1981, the insurance company gave defendant a company draft in the amount of $2,950.00.

Some week to ten days after setting fire to the truck Jett had asked defendant about his $200.00. Defendant replied that he was waiting for his insurance claim "to come in" before he could pay off Jett. Approximately three weeks after the truck was burned defendant paid Jett $200.00.

Appellant was charged with stealing over $150 by deceit by making a false insurance claim and recovering a company draft in excess of $2,950.00. Defendant testified he had no involvement with Jett with regard to the truck burning or payment for such. He claimed he had driven his truck to the shopping center and gone shopping. He reported to the St. Ann's Police that his truck was missing from the parking lot. Both defendant and his wife acknowledged receiving the $2,950.00 proceeds from the insurance company check for the truck loss.

In reviewing a jury tried case we view all the evidence tending to support the verdict as true, disregard all contrary evidence and indulge every inference that supports the verdict. *State v. Beedle*, 619 S.W.2d 334, 335 (Mo.App.1981).

Defendant contends that the state failed to prove that the insurance company draft was cashed or endorsed and therefore failed to prove stealing over $150.00. The state proved receipt of a draft given in the ordinary course of commerce, in an amount in excess of $150.00 and payable to an individual. There is no authority to support defendant's theory that this is not receipt by that individual of a thing of value over $150.00.

Furthermore, even if it is necessary to prove that the draft was cashed there is circumstantial evidence from which the jury could conclude that it was. The defendant said he would not pay Jett until he received the insurance proceeds. Jett was paid the $200.00 at a time subsequent to defendant's receipt of the draft. In addition defendant and his wife testified to receipt of the money. Defendant's first point is without merit.

Defendant next contends error in the trial court's failing to declare a mistrial when the prosecutor questioned him concerning post-arrest statements. Mistrial is a drastic remedy. *State v. Lee*, 654 S.W.2d 876, 879 (Mo. banc 1983). It should only be used to prevent obvious injustice where no other action would remove the prejudice claimed. *State v. Morris*, 639 S.W.2d 589, 593 (Mo. banc 1982), *cert. denied*, 460 U.S. 1042, 103 S.Ct. 1438, 75 L.Ed.2d 795 (1983). The trial court shall only be held to err upon a showing of clear abuse of discretion and prejudice to the defendant. *State v. Mensah*, 625 S.W.2d 135, 136 (Mo.1981). The claimed error arises from the following

discourse during the prosecutor's cross-examination of defendant:

Q Shortly after your arrest, you found out that, basically, Jett was going to turn State's evidence against you, I assume; is that correct?

A I didn't really understand this situation until Mr. Lane had explained it all to me.

Q That was shortly after you were arrested; correct?

A At the time I was arrested, even the arresting officer didn't know what it was for.

Q *And, after that, you never told the police anything about Jett, did you?*

MR. LANE: I will object and approach the bench, at this time.

(The following was heard at the bench, out of hearing of the jury)

MR. LANE: Your Honor, I will object, at this time, for the reason the question calls for—violates the man's right not to make a statement and his right against self-incrimination. There was no need for the appellant to—when he was arrested, making a statement to the police officer. I object to that. It is highly prejudicial and I ask a mistrial to be declared.

MR. BURNS: I am not asking him to make a statement. I am asking whether or not he went to the police after this information—after he knew about it. I think we have a right to bring it out.

MR. LANE: It is my understanding my Motion for a Mistrial and Discharge of the Jury, is overruled?

THE COURT: That is correct.

(The following was heard in open court, within hearing of the jury)

Q (By Mr. Burns) The only person you have ever told this story about—

MR. LANE: I object and ask to approach the bench.

THE COURT: Objection sustained. Proceed. (emphasis ours)

The defendant was never required to answer a question about statements after arrest. The jury would not know whether or not any statement was made, or, if made, what it might have been. The first brief question was followed by an objection and a discussion at the bench. The request for a mistrial was denied. The second question was incomplete and an interrupting objection was sustained.

Defendant's reliance on *State v. Nolan*, 595 S.W.2d 54 (Mo.App.1980) is misplaced. *Nolan* held "that *showing defendant's silence* after his arrest was not proper to impeach his version of the incident." (emphasis ours). 595 S.W.2d at 56. However, in *Nolan* the improper questions were in fact answered. *Nolan* is further distinguished by the number of inquiries. "The prosecutor inquired about defendant's silence numerous times." 595 S.W.2d at 56. During the cross-examination of Sutton there was a single unanswered question and a partial, interrupted question to which objection was sustained. There was no further attempt by the prosecuting attorney to pursue the matter. *See also State v. Williams*, 652 S.W.2d 102, 110 (Mo. banc 1983).

"Generally, when an improper question is asked but not answered, there is no prejudicial error." *State v. Harvey*, 625 S.W.2d 198, 201 (Mo.App.1981). In *Harvey* the court set forth the ultimate test to determine if the defendant's right against self-incrimination was violated: "Were the challenged remarks reasonably apt to direct the jury's attention to the fact that the defendant refused to speak on his behalf?" 625 S.W.2d at 201. The question here does not indicate to the jury that the defendant refused to speak in his own defense. If defendant had never had any contact with Jett then a failure to discuss him with the police would not necessarily incriminate defendant but could show his innocence.

In addition, MAI–CR 2.02 [1] was read to the jury before any evidence was taken.

---

1. MAI–CR 2.02 reads:
   You must not assume as true any fact solely because included or suggested by a question asked a witness. A question is not evidence, and may be considered only as it supplies meaning to the answer.

That instruction tells the jury they must not assume as true any fact included in or suggested by a question as a question is not evidence. Questions may be considered only as they supply meaning to an answer.

■ We find no clear abuse of discretion nor prejudicial error in the denial of a mistrial in this case. The point is denied.

■ Finally, defendant claims error in the giving of Instruction, MAI–CR 2d 1.10,[2] the "hammer" instruction. This claim requires no lengthy exposition. It is noted that the trial court quite properly followed the Notes on Use. The instruction was given "after extended deliberations by the jury", more than five hours. *See State v. Smith,* 431 S.W.2d 74, 86 (Mo.1968)—one hour and forty Minutes; *State v. Corlew,* 463 S.W.2d 836, 840 (Mo.1971)—two hours. The instruction was "appropriate" in that the jury was undecided, 10–2, and extended deliberations had already taken place. The instruction was in proper form. It was properly read and handed to the jury in the presence of defendant. The trial court made note of the time the jury withdrew to deliberate, the time the jury first announced it was undecided by a 10–2 split, the time the instruction was read and the time the verdict was returned. At no time prior to reaching a verdict did the jury disclose its majority position. Only the numerical split was announced.

In *State v. Broadux,* 618 S.W.2d 649 (Mo. banc 1981) the jury volunteered both the split and position of the majority, and the supreme court found no error in giving the instruction. In *State v. Thurber,* 625 S.W.2d 931, 934 (Mo.App.1981) we held that "[g]iving the "hammer" instruction is an abuse of the trial court's discretion when it is demonstrably coercive." Defendant has failed to prove that the instruction coerced the jury into a decision. The giving of Instruction MAI–CR2, Number 1.10 was not an abuse of trial court discretion.

Affirmed.

KAROHL, P.J., and WILLIAM F. MAUER, Special Judge, concur.

---

From time to time the attorneys may make objections. They have a right to do so and are only doing their duty as they see it. You should draw no inference from the fact that an objection has been made.

If the Court sustains an objection to a question, you will disregard the entire question and you should not speculate as to what the answer of the witness might have been. The same applies to exhibits offered but excluded from evidence after an objection has been sustained. You will also disregard any answer or other matter which the Court directs you not to consider and anything which the Court orders stricken from the record.

The opening statements of attorneys are not evidence. Also, you must not consider as evidence any statement or remark or argument by any of the attorneys addressed to another attorney or to the Court unless it is in the form of a stipulation or agreement between them or an admission by one of them concerning a particular matter.

2. MAI–CR 2d 1.10 reads:

It is desirable that there be a verdict in every case. The trial of a lawsuit involves considerable time and effort, and the parties are entitled to have their rights determined once and for all in every case. The twelve jurors chosen to try this case should be as well qualified to do so as any other twelve that might hereafter be chosen. Open and frank discussion by you in your jury room of the evidence in this case may aid you in agreeing upon the facts; however, no juror should ever agree to a verdict that violates the instructions of the Court, nor find as a fact that which under the evidence and his conscience he believes to be untrue. Yet each of you should respect the opinions of your fellow jurors as you would have them respect yours, and in a spirit of tolerance and understanding endeavor to bring the deliberations of the whole jury to an agreement upon a verdict.